■ In the Matter of AMBER W., Alleged to be a Permanently Neglected Child. OTSEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Appellant; ANNETTE W., Respondent. — Appeals from two orders of the Family Court of Otsego County (Kepner, Jr., J.), entered December 2, 1983 and December 28, 1983, which, *inter alia,* dismissed a petition to adjudicate Amber W. to be a permanently neglected child and ordered her returned to respondent.

Respondent was married to Chris W. at the age of 16 after having their child, Amber. Petitioner initially became involved on January 2, 1981 when it was reported that the family lacked heat at their residence. There was another report to petitioner on March 10, 1981 that respondent and her husband had a fight and that the father had thrown Amber across the room. Petitioner then helped respondent move to her aunt's house and began counseling her. Respondent was informed that if she reunited with her husband, petitioner would consider the child in danger.

At the end of March, 1981, the couple, lacking a suitable place to live, temporarily placed two-year-old Amber with petitioner under a voluntary surrender agreement. In June, 1981, respondent moved into a trailer park and Amber was returned to her. She agreed not to live with her husband and petitioner agreed to assist her in establishing a stable home. However, in August, the mother became ill and temporarily placed Amber with petitioner. During the period from August, 1981 through September, 1982, Amber was placed in two different foster homes where she was visited, rather inconsistently, by respondent. In May, 1982, respondent left her husband after being battered by him.

On June 23, 1982, petitioner commenced a child neglect proceeding pursuant to section 384-b of the Social Services Law based upon allegations that respondent had not paid support

and could not obtain housing. The matter was adjourned in contemplation of dismissal with a review to be held in three months' time. Petitioner was to file a written plan to be used to reunite respondent and her child and assist respondent in finding suitable housing. The parties executed a plan on July 15, 1982 which required respondent to take counseling, maintain contact with petitioner and continue visitations with Amber.

In October, 1982, petitioner requested an extension of the placement of Amber with it under the neglect petition and also filed a petition for permanent neglect, contending that the best interest of the child required termination of the parental relationship. A fact-finding hearing was held on November 22 and December 13, 1982. On the latter date, Family Court dismissed the petition for permanent neglect but extended foster care for six months, when a new proceeding was to be filed. Family Court also ordered compliance with the July 15, 1982 plan. When petitioner refused respondent a 1982 Christmas Day visit with her daughter, Family Court, as the result of a show cause order obtained by respondent, directed that respondent be allowed a Christmas visitation with Amber.

On June 1, 1983, petitioner filed a new permanent neglect petition alleging that respondent had failed for more than one year to maintain contact with or plan for the future of the child although financially and physically able to do so. By decision dated November 17, 1983, Family Court dismissed this petition for permanent neglect, finding neither a lack of substantial and continuous contact nor failure to plan for the future of the child. In an order entered December 2, 1983, Family Court required the parties to arrange a plan for return of the child. Having difficulty arranging adequate transition, the Law Guardian brought an order to show cause returnable December 24, 1983. By order entered December 28, Family Court required that Amber be returned to respondent and ruled that petitioner have no further contact with respondent unless requested by the court, respondent or Law Guardian. Petitioner appeals from both the December 2 and 28, 1983 orders.

Petitioner's first contention, that the dismissal of the first petition for permanent neglect for the period August 19, 1981 to October 7, 1982 (order of Dec. 13, 1982) precluded using that period in the subsequent hearing on June 1, 1983 on the basis of the doctrine of "issue preclusion", is rejected. Before a court may invoke the doctrine of issue preclusion, it must be established that there was a full and fair opportunity to contest the issues as well as an identity of issues necessarily decided in the prior matter (*Capital Tel. Co. v Pattersonville Tel. Co.,* 56 NY2d 11;

*Schwartz v Public Administrator,* 24 NY2d 65). Respondent herein met her burden of showing that the issue of proof of permanent neglect was necessarily decided in the prior proceeding so that identity of issues was established. Petitioner, on the other hand, had the burden of showing the lack of a full and fair opportunity to litigate the issue (*Schwartz v Public Administrator, supra*). Petitioner does not address this issue, but we note that Family Court's order of December 13, 1982 gave notice of future litigation by this statement: "Prior to the end of six months * * * the County will be filing a petition to either return Amber to her mother or alleging permanent neglect." Thus, Family Court in its order contemplated future litigation of the issue, indicating that no estoppel was intended and, consequently, that "issue preclusion did not occur".

Petitioner's next argument, that Family Court erred in determining that petitioner had not affirmatively established by clear and convincing evidence that it used due diligence to strengthen the parental relationship, is also rejected. Recently, the Court of Appeals stated that a local agency must: "affirmatively plead in detail and prove by clear and convincing evidence that it has fulfilled its statutory duty to exercise diligent efforts to strengthen the parent-child relationship and to reunite the family" (*Matter of Sheila G.,* 61 NY2d 368, 373). The local agency must determine "the particular problems facing a parent" and "make affirmative, repeated, and meaningful efforts to assist the parent in overcoming these handicaps" (*id.,* at p 385). The Legislature also has set forth some guidelines to assist in determining if an agency has proved that it used "diligent efforts" (see Social Services Law, § 384-b, subd 7, par [f]).

In the proceeding at bar, petitioner does show that it made efforts to reunite the family by providing transportation for visitations, information on housing and other services, including extension services for nutrition, Federally subsidized housing and the Women, Infants and Children Program, and that it provided several plans to aid respondent. However it appears that respondent felt that petitioner was really an adversary during this period. One counselor noted that respondent felt like she was fighting a losing battle with petitioner. Respondent, through her attorney, had the original caseworker removed due to lack of trust. It appears that petitioner knew that respondent had antagonistic feelings towards it, yet did not correct these feelings, even enhancing them by opposing the Christmas visit in 1982. Although petitioner did attempt to supply transportation, it located Amber in minimally accessible homes. Further, petitioner did not appear to give proper consideration to the fact

that respondent was very young, had been raped several times in her life, had lost her father who committed suicide, and was experiencing a difficult pregnancy. Thus, Family Court's conclusion that petitioner did not act with due diligence is amply supported in this record (cf. *Matter of Star Leslie W.*, 63 NY2d 136).

Petitioner's third claim, that Family Court erred in its determination that it did not establish by clear and convincing evidence that respondent failed for a period greater than one year to substantially and continually maintain contact with or plan for the future of her child, is not persuasive. Section 384-b (subd 7, par [a]) of the Social Services Law establishes two tests to determine permanent neglect. There must be clear and convincing evidence that there was either a failure to substantially and continuously maintain contact with the child or failure to plan for the future of the child (*Santosky v Kramer,* 455 US 745; *Matter of Michael B.,* 58 NY2d 71).

The record in this case shows several visits by respondent to the child, even though several visits were also missed. The 1982 Christmas visit demonstrates the effort made by respondent to obtain visitation. These actions established the required contacts (see *Matter of Jennifer VV.,* 99 AD2d 882). Thus, there is a lack of clear and convincing evidence of a failure to maintain contacts.

In assessing whether there was proof of a failure to plan for the future of the child by clear and convincing evidence, we note that the Court of Appeals has asserted that the adequacy of a plan for the child's future should not be "unrealistically high" (*Matter of Orlando F.,* 40 NY2d 103). Family Court could properly conclude that the plan's goals and means were unrealistically high when the factors of respondent's physical problems, age and inferior feelings towards petitioner were considered. An agency should mold its "diligent efforts" to fit the individual circumstances so as to allow the parent to provide for the child's future (*Matter of Anita "PP",* 65 AD2d 18).

Next, we find that petitioner's assertion that Family Court erred in not conducting a dispositional hearing is meritorious. Subdivision (a) of section 625 of the Family Court Act requires that "[u]pon completion of the fact-finding hearing, the dispositional hearing may commence immediately after the required findings are made". At the conclusion of the dispositional hearing, "the court shall enter an order of disposition: (a) dismissing the petition * * * (b) suspending judgment * * * or (c) committing the guardianship and custody of the child" (Family Ct Act, § 631). The plain words of the statute indicate that the Legislature intended that, except in the case where there is no finding

of permanent neglect and a waiver of the right to a dispositional hearing made with consent of all the parties (Family Ct Act, § 625, subd [a]), there should be a dispositional hearing. Thus, Family Court erred in not holding such a hearing since there was no consent to waive it in this case. There should be a remittal of this proceeding to Family Court for the purpose of conducting a dispositional hearing.

We have considered the other arguments of error raised on appeal and find them unpersuasive.

Orders reversed, on the law, without costs, and matter remitted to the Family Court of Otsego County for further proceedings not inconsistent herewith. Main, J. P., Casey, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.