■ In the Matter of the Guardianship of MILTON J. ALEXANDER, an Infant. NEW YORK FOUNDLING HOSPITAL, Appellant; NICOLE ALEXANDER et al., Respondents.—Order of the Family Court, New York County (Leah Marks, J.), entered December 13, 1985, which, after a fact-finding hearing in a proceeding to terminate parental rights pursuant to Social Services Law § 384-b and make the child involved available for adoption, dismissed the petition, is reversed, on the law and facts, a finding of permanent neglect made against respondent, and the matter is remanded to the Family Court for a dispositional hearing, without costs.

The child, Milton, was born on March 22, 1983 to respondent Nicole, who was unmarried at the time. He was placed with the petitioner agency at birth, directly from the hospital. Within two weeks of birth, the mother, who had had another child at the age of 13 and was 16 at the time of Milton's birth, left the group home for unwed mothers, where she had been residing, and thereafter lived in a succession of places. From April 1983 through December 1984, the mother refused to return to the unwed mother program or accept offers or suggestions of housing made to her by the agency. Visits with her son were offered to the mother, as well as other help. Her visits with Milton were intermittent and she did not plan for his future.

On April 9, 1985, the agency brought a petition pursuant to Social Services Law § 384-b and Family Court Act article 6, seeking to terminate parental rights and make Milton available for adoption. Following a hearing at which the only witness was Brian Quinn, a social worker for the agency, the Family Court dismissed the petition, making findings that although the mother failed to visit the child consistently and failed to make plans, the agency did not make sufficient diligent efforts to permit a finding of permanent neglect. We disagree and, therefore, reverse.

Social Services Law § 384-b (7) (f) defines diligent effort as reasonable attempts by an agency to assist, develop and encourage a meaningful relationship between parent and

child. In *Matter of Sheila G.* (61 NY2d 368, 373), the Court of Appeals stated the burden of proof as follows: "When a childcare agency has custody of a child and brings a proceeding to terminate parental rights on the ground of permanent neglect, it must affirmatively plead in detail and prove by clear and convincing evidence that it has fulfilled its statutory duty to exercise diligent efforts to strengthen the parent-child relationship and to reunite the family. Only when this duty has been deemed satisfied may a court consider and determine whether the parent has fulfilled his or her duties to maintain contact with and plan for the future of the child."

Guidelines for determining whether the agency has complied with its duty to exert diligent efforts are set forth in Social Services Law § 384-b (7) (f), providing that: " 'diligent efforts' shall mean reasonable attempts by an authorized agency to assist, develop and encourage a meaningful relationship between the parent and child, including but not limited to:

"(1) consultation and cooperation with the parents in developing a plan for appropriate services to the child and his family;

"(2) making suitable arrangements for the parents to visit the child * * *

"(3) provision of services and other assistance to the parents * * * so that problems preventing the discharge of the child from care may be resolved or ameliorated; and

"(4) informing the parents at appropriate intervals of the child's progress, development and health".

"In this statutory scheme, the onus is on the agency, before parental rights can be terminated, to make some attempt to assist parents, with counseling, planning, visitation and the procurement of housing and employment where that is necessary in order to help them overcome the problems that separate them from their children." *(Matter of Jamie M.,* 63 NY2d 388, 394-395.)

An examination of these criteria and the record confirms that the agency herein sustained its burden of proving, by clear and convincing evidence, that despite its diligent efforts to establish a parental relationship, the mother failed to plan for the child's future. The agency initiated plans for Milton's return as soon as he was placed. It prepared written service plans which clearly and specifically addressed the mother's needs and circumstances and attempted to implement visitation with the child on a biweekly basis. The service plans

included, *inter alia,* the elements of consistent visiting, cooperation in case planning, entrance into the high school equivalency program, entrance into a job training program, securing public assistance, and attendance at a parent education program. The mother failed to follow through on all of the elements of these plans. With regard to visitation, the mother attended only 10 out of approximately 44 scheduled visits in 1983 and 1984, although the agency repeatedly attempted to contact her personally and by mail, telephone, as well as trying to reach her friends and relatives. The child was present for each visit scheduled. He had to return home over 30 times without seeing his mother. With regard to its obligation to assist in case planning, the agency scheduled appointments but the mother failed to appear. Her whereabouts were unknown for long periods, which made planning impossible. The agency consistently followed every lead in order to locate the mother when she moved, including writing to last known addresses, calling all numbers ever provided, contacting social workers, etc. It encouraged the mother to pursue her high school equivalency program (while not requiring a diploma as a prerequisite to the child's return) and also gave her information about various types of programs in which she claimed an interest, but she never enrolled in any of them.

With reference to the mother's lack of housing and income, the agency persistently encouraged her to apply for public assistance. It provided money and gave instructions as to how to get a birth certificate for Milton. It scheduled an appointment to escort her to apply for assistance. The agency also referred her to a Social Services agency specifically designed to assist individuals seeking public assistance. The mother never followed through, however, and never appeared for her appointment with the agency worker. The agency also offered her a listing of available subsidized housing and prepared documentation for her to apply for affordable housing. She never appeared to pick up the information. The mother also refused group housing, which both the agency and Social Services felt would best serve her needs at the time. She opposed all counseling programs offered. She also did not respond to a program at Queens General Hospital for family planning services and therapy and declined the assistance of Planned Parenthood, to which she was referred by the agency. (She gave birth to a third child in May 1984 and had an abortion in October 1984.)

Thus, the agency made all the appropriate efforts to keep the mother informed of Milton's growth and development, to

encourage visitation and to implement planning for her child's return. The mother was uncooperative and indifferent to these persistent efforts. Although it is required to prove that it exerted diligent efforts to encourage and strengthen parental relationships *(see, Matter of Jamie M., supra)*, "[o]f course, the agency is not charged with a guarantee that the parent succeed in overcoming his or her predicaments. Indeed, an agency that has embarked on a diligent course but faces an utterly un-co-operative or indifferent parent should nevertheless be deemed to have fulfilled its duty." *(Matter of Sheila G., supra,* 61 NY2d, at 385.)

The Family Court conceded that the agency's efforts might have been considered diligent if the mother were 20 years old, but found they were not because she was 16. *(See, Matter of Amber W.,* 105 AD2d 888.) Even assuming such higher standards where the mother is a minor, the agency herein has met those standards. It was cognizant of the mother's youth and offered assistance particularly designed to meet her needs by, *inter alia,* consistently recommending group home placement. This group living arrangement would have supplied the mother with housing, therapy, counseling, and educational and emotional assistance. The agency also encouraged her to remain in contact with her brother and father and even considered her new boyfriend's mother as a resource, although this boyfriend was not Milton's father. The agency even referred the mother and Milton for placement in mother-child foster care, but this idea was vetoed by Social Services because of its justifiable fear, supported by her past history, that the mother would abscond with Milton. Thus, many of the agency's efforts were specifically directed toward the mother's youth and problems as an unwed mother. Further, the agency was extremely patient with the mother, reviewing its plans with her, calling her, attempting to encourage visitation, making extensive referrals and exploring numerous resources, as detailed above.

The agency attempted to assist the mother with counseling and with planning for the child's future. It attempted to aid in the procurement of housing and financial assistance and it scheduled regular, meaningful visits with the child. Accordingly, under these facts, present in the record at the Family Court hearing, there was a showing by clear and convincing evidence that the agency satisfied its statutory duty *(see, Matter of Sheila G., supra,* 61 NY2d, at 384). "The statute requires only reasonable efforts and this record is devoid of any commitment by respondent to plan for herself and her

baby or to follow through on suggestions and efforts made by petitioner's staff [citations omitted]. An agency which has tried diligently to reunite a mother with her child but which is confronted by an uncooperative or indifferent parent is deemed to have fulfilled its duty [citation omitted]." *(Matter of Star Leslie W.,* 63 NY2d 136, 144.) Concur—Kupferman, J. P., Ross and Asch, JJ.

Carro, J., dissents in a memorandum as follows: The majority correctly sets forth the general rules regarding the burden of proof an agency must meet before it can succeed on a petition to terminate parental rights on the basis of permanent neglect and the proper definition of diligent efforts. I would add to that discussion that the efforts undertaken by an agency to strengthen and encourage the parental relationship with the child must also be individualized to meet the parent's needs and to attempt to overcome the problems which separated the parent and child in the first instance. Thus, in *Matter of Sheila G.* (61 NY2d 368, 385), the court stated that diligent efforts require an agency to "always determine the particular problems facing a parent with respect to the return of his or her child and make affirmative, repeated, and meaningful efforts to assist the parent in overcoming these handicaps."

The Social Services Law itself expressly requires that inquiry be made as to whether the agency has made "provision of services and other assistance to the parents * * * so that problems preventing the discharge of the child from care may be resolved or ameliorated" (Social Services Law § 384-b [7] [f] [3]). It is with respect to the sufficiency of the agency's efforts in addressing the individual problems preventing respondent mother from assuming care of her child that I find the agency did not diligently and meaningfully assist the mother in planning for the return of her child.

The facts of this case support the conclusion that respondent mother was treated in a very routine fashion with the usual recommendations made without regard for her young age, her lack of education and her lack of a family support system and without much inquiry into her personal history in order to discover the root of her problems. Other elements worth noting of what I perceive to be the agency's lack of diligent efforts were the slowness with which the agency acted on certain issues and the insensitivity and inappropriateness of many of its suggestions to respondent mother.

Nowhere does the record indicate that a detailed personal history of respondent mother was ever taken. At only 15 years

of age, respondent mother appeared at the agency, the New York Foundling Hospital, pregnant and homeless. The record does not disclose what created her state of homelessness. In July of 1983, only a few months after the birth of her child, she was hospitalized. There is no indication that the agency ever inquired as to the reason for her hospitalization or as to her health. Throughout the agency's two-year relationship with respondent mother, respondent was hospitalized an additional four times. The nature of only one of these hospitalizations is known, an October 22, 1984 hospitalization for an abortion. Inquiries were apparently never made as to the nature of the other hospitalizations or to determine whether respondent's frequent hospitalizations hindered her ability to plan for the return and care of Milton. During these hospitalizations, visits with the child were scheduled without it ever being ascertained whether respondent could even make the visits.

There also appears to be inadequate information concerning respondent's relationship with her father, rendering inappropriate the agency's recommendations to have her live with her father and its efforts to involve respondent's father in the care of Milton. The sketchy information provided in the record on this issue basically reveals a very tense and hostile relationship between respondent and her father. Yet, the agency encouraged respondent to live with the father. Without respondent's consent, the agency even evaluated respondent's father in order to determine his suitability as a resource for Milton. After a negative evaluation, the agency made further efforts to foster a relationship between respondent's father and Milton. The inappropriateness of the agency's recommendation that respondent return to live with her father is made even more apparent by the fact that respondent's father lived in New Jersey, making efforts to advance a viable relationship between mother and child more expensive and difficult. These ill-suited efforts to cure the problem of respondent's homelessness reflect the agency's lack of concern for respondent's problems and its routine approach to her case.

The agency, additionally, was very slow to move in assisting respondent in developing a plan for the return of her child. The first planning meeting took place on February 8, 1984, almost a year after Milton was born, even though meetings between the agency and respondent took place on April 27, 1983, May 5, 1983 and November 18, 1983. A plan was presented to respondent at this meeting in 1984, which had been developed without her consultation. In dealing with an

impoverished, uneducated, teen-age mother, a delay of almost a year before even developing a plan for the return of the mother's child reflects grave irresponsibility and undoubtedly had an adverse effect on the mother, who due to her age and inexperience needed prompt, intense and meaningful assistance to prevent a loss of motivation and further deterioration, both psychologically and financially.

A review of the over-all quality of the agency's meetings with respondent again points to the agency's lack of diligent efforts. In the two-year period, the agency had only two planning meetings with respondent, the other five having been very brief and perfunctory meetings. Indicative once more of the slowness and lack of diligence with which the agency acted is the fact that the first discussion of public assistance did not take place until February 8, 1984 and the first discussion of family planning did not take place until April 9, 1984, more than a year after Milton's birth, when respondent was already eight months' pregnant with her third child.

Furthermore, it was not until May 24, 1984 that the agency said it would give respondent a letter to aid her in seeking housing assistance from the New York City Housing Authority and a list of areas where section 8 housing was available. Yet, there is no indication that this information was ever given to respondent at her June 20, 1984 meeting with the agency or even mailed to her.

The above facts establish, in my view, that respondent was treated in a very perfunctory manner by the agency with recommendations made which were at times unrealistic and even adverse to her interests and with little inquiry made into respondent's personal problems, which undoubtedly affected her ability to plan for her child's future. The agency, moreover, delayed inordinately in making specific recommendations and did not follow through on certain crucial items. For the above reasons, I would not disturb the Family Court's determination that the agency did not sustain its burden of proving sufficient diligent efforts to satisfy the requirements of the Social Services Law § 384-b, and, accordingly, I would affirm.