◼ In the Matter of RITA VV., a Child Alleged to be Permanently Neglected. WARREN COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent-Appellant; GRACE VV., Appellant-Respondent, and ANNA WW. et al., Respondents-Appellants. [619 NYS2d 218] —Peters, J. Cross appeals from an order of the Family Court of Warren County (Austin, J.), entered November 27, 1991, which, *inter alia,* granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate Rita VV. a permanently neglected child, and terminated the parental rights of respondent Grace VV.

When Rita VV. was born in 1982, respondent Grace VV. (hereinafter respondent) was 14 years old. Respondent's parents wanted her to put the child up for adoption and refused to allow respondent to move back into their home with the child. As a result, respondent and the child were placed in the foster care of respondents Derry WW. and Anna WW. in April 1982. In July 1982, respondent returned to her parents' home leaving the child with the foster parents, where she remains.

In 1988, a petition to terminate respondent's parental rights pursuant to Social Services Law § 384-b (7) (a) was granted after a fact-finding hearing. At the dispositional stage, Family Court granted intervenor status to Rita's maternal grandparents, respondents Grace ZZ. and Joseph ZZ., as well as the foster parents.

In determining the best interest of the child, Family Court in its dispositional order committed the child to the guardianship and custody of petitioner "upon condition that [it] cooperate in any adoption proceeding instituted by the foster parents * * * upon condition that the birth mother of the child, the siblings of the child (children of the birth mother) and the grandparents of the child (parents of the birth mother) continue to have rights of reasonable visitation with [the child]". It is from this determination that respondent appeals and petitioner, the foster parents and the maternal grandparents cross-appeal.

Respondent contends that Family Court erred in finding

that the child was permanently neglected since petitioner failed to sustain its burden of showing that it exercised diligent efforts to strengthen the parental relationship or that respondent failed to stay in contact with the child and plan for her future. We disagree.

The record fully supports Family Court's determination that petitioner exercised due diligence to strengthen the parental relationship. Petitioner established a realistic plan which took into consideration respondent's age, emotional circumstances and financial limitations (see, Matter of Alexander, 127 AD2d 517; Matter of Kip D., 115 AD2d 864). Petitioner's initial plan in April 1982 was to place both respondent and the child in foster care so that the foster parents could serve as a role model for respondent. When petitioner's plan was thwarted by respondent's action in leaving foster care to return to the home of her parents, petitioner enrolled her in parenting courses and counseling. Respondent failed to substantially attend any of the programs offered. Responsibility for planning for the return of the child is not "one-sided, for the parent is obligated to cooperate with the agency in fulfilling his or her responsibilities toward the child" (Matter of Kip D., supra, at 866; see, Matter of Star Leslie W., 63 NY2d 136). Accordingly, we find that petitioner has sustained its burden of showing that it exercised diligent efforts to strengthen the parental relationship (see, Matter of Star Leslie W., supra; Matter of Sheila G., 61 NY2d 368).

We further find the record replete with evidence of respondent's failure to maintain consistent contact with her child or plan for her child's future. Evidence revealed that from April 1985 until March 1988, respondent visited the child four to six times out of the 454 scheduled visits. In order to encourage visitation, her caseworker offered transportation and explained the need for consistent and meaningful visitation. Although respondent's visitation became more consistent, she steadfastedly refused to attend counseling or complete parenting classes. Hence, respondent's failure to address the problems preventing reunification, coupled with her failure to participate in services offered, support Family Court's determination that she failed to plan for the return of her child (see, Matter of Albert T., 188 AD2d 934; Matter of Jennie EE., 187 AD2d 877, lv denied 81 NY2d 706; Matter of Daniel C., 169 AD2d 691, lv denied 77 NY2d 809; Matter of Laytana YY., 154 AD2d 741; Matter of Kevin PP., 154 AD2d 739).

Any contention by respondent that petitioner had improperly pursued the goals of adoption and reunification simulta-

neously is rejected *(see, Matter of Maryann Ellen F.,* 154 AD2d 167, *appeal dismissed* 76 NY2d 773). We similarly reject respondent's contention that she was denied effective assistance of counsel *(see, Matter of Leon RR,* 48 NY2d 117; *People v Aiken,* 45 NY2d 394; *Matter of Shawn C. A.,* 110 AD2d 697, *lv denied* 65 NY2d 605). Any potential errors noted do not, in and of themselves, establish ineffectiveness, particularly in a nonjury trial where it is presumed that the trier of fact relied only upon competent evidence *(see, People v Arnold,* 188 AD2d 1020, *lv denied* 81 NY2d 836).

Addressing next the terms of the dispositional order, Family Court found that the best interest of the child would be served by freeing her for adoption. At this stage of the proceeding, there is no presumption that return to the natural parent would serve the child's best interest *(see,* Family Ct Act § 631). Evidence at the dispositional hearing revealed that the children remaining in respondent's care have been the subject of 11 indicated reports of child abuse or neglect, which included, *inter alia,* instances of bruises and bite marks, sexual abuse of a female infant and educational neglect. The record further reflects that one of the children residing with respondent is deaf and that respondent has failed to adequately learn to "sign" so as to sufficiently communicate with that child. Hence, considering the extensive expert opinions available, Family Court was free to choose among those opinions given *(see, Matter of Tamara B. v Pete F.,* 185 AD2d 157, *appeal dismissed* 80 NY2d 959, *lv denied* 81 NY2d 703, *cert denied* — US —, 114 S Ct 111; *Matter of Mary Ann FF.,* 129 AD2d 899, *lv denied* 70 NY2d 605) and determine that the child's best interest lies in being adopted by her long-term foster parents *(see, Matter of Diana Crystal D.,* 200 AD2d 365; *Matter of Eric W.,* 175 AD2d 871).

With respect to Family Court's determination that the adoption be conditioned upon visitation with respondent and the maternal grandparents, we find it to be in error. Social Services Law § 384-b contemplates an adversarial proceeding. It does not contain a provision that upon a determination that parental rights should be terminated a court can require or permit contact by and between a biological parent and a child who has been adopted. While Family Court was correct that the Legislature has amended Social Services Law § 383-c to allow a parent to condition a *voluntary surrender* for adoption upon, *inter alia,* contact with the child or information concerning the child, the proceeding herein did not involve such a voluntary surrender. Accordingly, the provisions of Social

Services Law § 383-c are wholly inapplicable and, therefore, Family Court was without authority in this *adversarial proceeding* to require such continued contact as a condition of adoption.

We further find that Family Court erred in granting visitation to the maternal grandparents.* While it is well settled that grandparents may petition for visitation with their grandchild even where the grandchild has been adopted *(see,* Domestic Relations Law § 72; *Layton v Foster,* 61 NY2d 747; *People ex rel. Sibley v Sheppard,* 54 NY2d 320), such right is not presumed. The grandparents must first show that they have a sufficient existing relationship with the grandchild or have made a sufficient effort to establish such a relationship and that visitation would be in the child's best interest *(see, Matter of Emanuel S. v Joseph E.,* 78 NY2d 178). Here, at the commencement of the child's young life, the maternal grandparents made no effort to create such a relationship. Rather, according to the maternal grandmother, respondent was encouraged to give the child up for adoption and, when she refused to do so, the maternal grandparents refused to permit the child and respondent to live in their household. The record further reflects that the child was rejected by her maternal grandfather due to her Puerto Rican heritage. Hence, we agree with petitioner and the foster parents that visitation between the child and the maternal grandparents is not in the child's best interest *(see, supra).*

Mikoll, J. P., Crew III and Casey, JJ., concur. Ordered that the order is modified, on the law and the facts, without costs, by deleting the requirement that postadoptive visitation take place between Rita VV. and respondents Grace VV., Joseph ZZ. and Grace ZZ., and, as so modified, affirmed.

---

* We note that the maternal grandparents did not file a timely brief on appeal.