[682 NYS2d 62]

In the Matter of Ann M. C., Appellant, v Orange County Department of Social Services, Respondent.

Second Department, December 16, 1998

*Neal D. Futerfas,* White Plains, for appellant.

*Richard B. Golden, County Attorney* of Orange County, Goshen (*Christine Foy-Stage* and *Stephen Toole* of counsel), for, respondent.

*Jean M. Hernon,* Goshen, *Law Guardian* for infant.

## OPINION OF THE COURT

MILLER, J.

The issue to be decided on this appeal concerns the effect of an adjudication terminating an individual's parental rights on that individual's standing as a grandparent to seek visitation with her biological grandchild. Mere standing to seek visitation, not the ultimate entitlement to visitation, is the issue before us. More specifically, must the termination of the petitioner's parental rights as to her daughter result in an absolute bar to the petitioner's standing to seek grandparental visitation with her daughter's child? Contrary to the conclusion of the Family Court, we answer that question in the negative.

The petitioner, Ann M. C., is the biological mother of Elizabeth C., who was born on October 29, 1979. In 1988, the petitioner's parental rights as to Elizabeth C. were terminated pursuant to Social Services Law § 384-b. Elizabeth was approximately nine years old at that time. The record contains no information concerning the circumstances under which the petitioner's parental rights were terminated but she has had a history of drug and alcohol dependence. Elizabeth has reportedly been in residential placement for an extended period due to behavioral and emotional problems.

According to various exhibits in the record, the petitioner has made genuine progress towards turning her life around. She has reportedly been sober since 1991 and is working toward obtaining a General Equivalence Diploma. She reportedly provides satisfactory child care services for a friend, a single mother of three children. Thus, while the record is some-

what sparse, by all indications the petitioner is making remarkable progress.

Notwithstanding that the petitioner's parental rights to Elizabeth were terminated, it is alleged without controversion that the Department of Social Services (hereinafter DSS) has permitted the petitioner to visit with Elizabeth, and mother and daughter now reportedly enjoy a close relationship. Thus, it appears that despite the termination of the petitioner's parental rights, a parent/child relationship now exists.

On September 30, 1996, Elizabeth, then 16, gave birth to a son, DaQuane. DaQuane is reportedly in the care of the DSS as a neglect petition has been filed against Elizabeth. The record contains no information whatsoever concerning the removal of DaQuane from Elizabeth's care. In any event, having reestablished a relationship with Elizabeth, the petitioner commenced the instant proceeding for visitation with DaQuane. The petition, dated October 23, 1996, was filed fewer than four weeks after DaQuane's birth.

After a perfunctory hearing at which no evidence was taken and no witnesses testified, the Family Court asked for the submission of memoranda of law on the issue of the petitioner's standing. The Orange County Attorney, representing the DSS, argued that the termination of the petitioner's parental rights vis-à-vis Elizabeth severed any right the petitioner might have otherwise had to seek visitation with DaQuane. The petitioner argued that in light of the progress she has made in turning her life around, visitation should be permitted as being in DaQuane's best interests. DaQuane's Law Guardian argued that whether or not the petitioner should be granted visitation with DaQuane was a factual matter which could only be decided after a hearing to determine whether or not DaQuane's best interests would be served by permitting visitation.

By decision and order dated February 3, 1997, the Family Court dismissed the petition, finding that the petitioner "has failed to establish that she is a grandparent for purposes of standing". The court concluded that as a matter of law the termination of the petitioner's parental rights vis-à-vis Elizabeth also severed the petitioner's grandparental rights as to DaQuane, as "[t]o hold otherwise would controvert the policy of finality of termination proceedings and it would render meaningless the word termination in the phrase 'termination of parental rights' ".

The Family Court erred as a matter of law in holding that termination of the petitioner's rights to her child ipso facto

terminated her rights to seek visitation with her grandchild. There is simply no statutory mandate or controlling case law, under facts similar to those at bar, that unequivocally holds that the termination of a grandparent's parental rights over a child irrevocably precludes that grandparent from seeking grandparental visitation.

Moreover, the court erred in its conclusion that to grant standing to the petitioner would controvert the policy and finality of termination proceedings. To begin with, the subject child, DaQuane, is not presently a subject for termination of parental rights, and he may never be. There has only been a determination that his teenage mother is not presently capable of caring for him pursuant to a finding in a neglect proceeding. The record reveals no facts in relation to that proceeding that would cause us to infer that future proceedings seeking the termination of her parental rights are forthcoming. Therefore, granting the petitioner's application to seek standing for visitation with her grandchild would in no way interfere with termination proceedings which are presently nonexistent and unforeseeable.

Nor is there any rational basis for concern that granting the petitioner standing to seek visitation would impair DaQuane's opportunity for adoption, should termination proceedings ever be commenced. A grandparent may seek visitation with a grandchild even after parental rights have been terminated or the child has been freed for adoption (*see, Matter of Rita VV.,* 209 AD2d 866; *Matter of Loretta D. v Commissioner of Social Servs. of City of N. Y.,* 177 AD2d 573, 575). Clearly, the Family Court misapplied the provisions and purposes relevant to termination proceedings to the facts in this case.

Visitation rights of grandparents are governed by Domestic Relations Law § 72. As pertinent to this appeal, that section provides: "Where either or both of the parents of a minor child, residing within this state, is or are deceased, or where circumstances show that conditions exist which equity would see fit to intervene, a grandparent or the grandparents of such child may apply * * * to the family court pursuant to subdivision (b) of section six hundred fifty-one of the family court act; and on the return thereof, the court, by order, after due notice to the parent or any other person or party having the care, custody, and control of such child, to be given in such manner as the court shall prescribe, may make such directions as the best interest of the child may require, for visitation rights for such grandparent or grandparents in respect to such child." Thus,

the predominant concern in cases of grandparental visitation is whether such visitation would be in the best interests of the grandchild (*see, Matter of Emanuel S. v Joseph E.,* 78 NY2d 178; *Matter of DiBerardino v DiBerardino,* 229 AD2d 539; *Matter of Kaywonne M.,* 210 AD2d 54; *Matter of Rita VV., supra; Matter of Loretta D. v Commissioner of Social Servs. of City of N. Y., supra*).

The prevailing state of the law regarding grandparental visitation was reviewed by the Court of Appeals in *Matter of Emanuel S. v Joseph E.* (78 NY2d 178, *supra*). As the Court noted, at common law grandparents had no right to visitation against the wishes of a custodial parent. In 1966 the Legislature enacted Domestic Relations Law § 72 to grant grandparents standing to seek visitation, but only when the grandparents' child had died. In 1975 the Legislature amended Domestic Relations Law § 72 to further permit grandparents to seek visitation " 'where circumstances show that conditions exist which equity would see fit to intervene' " (*Matter of Emanuel S. v Joseph E., supra*, at 181, quoting Domestic Relations Law § 72). Thus, now a grandparent seeking visitation must first demonstrate the existence of standing by proving either that his or her child has died, or that standing should be granted based upon equitable considerations. Thereafter, whether or not to permit grandparental visitation turns on an evaluation of the best interests of the grandchild (*Matter of Emanuel S. v Joseph E., supra*). Each case must be determined on its individual merits.

It is settled that the very issue of standing should only be made after consideration of all relevant facts and circumstances (*see, Matter of Luma v Kawalchuk,* 240 AD2d 896; *Matter of Coulter v Barber,* 214 AD2d 195). Ordinarily, grandparents seeking visitation must do more than merely allege their love and affection for the grandchild. They must establish a sufficient existing relationship with their grandchild, or in cases where that has been frustrated by the parents, a sufficient effort to establish one so that the court perceives the application as one deserving the court's intervention (*see, Matter of Emanuel S. v Joseph E., supra*, at 182; *see also, Matter of Kenyon v Kenyon,* 251 AD2d 763; *Matter of Richard YY. v Sue ZZ.,* 249 AD2d 885). Here, the petitioner has had no opportunity to establish any relationship with her grandson. However, she filed her visitation petition before DaQuane was even one month old! As the Court of Appeals recognized, "what is required of grandparents must always be measured against

what they could reasonably have done under the circumstances" (*Matter of Emanuel S. v Joseph E., supra,* at 183). Clearly, under the unusual circumstances at bar, the petitioner could have done nothing more.

This issue is one of first impression in the Second Department. The Appellate Division, Third Department, has considered it on two occasions. In *Matter of Catherine JJ. v Charlotte II.* (216 AD2d 752), the petitioner grandmother sought visitation with the offspring of a daughter over whom the petitioner's parental rights had been terminated. In a brief memorandum decision the Third Department affirmed the order of the Family Court denying the grandmother's application. The Court held that the termination of the petitioner's parental rights over her daughter severed "any familial connection to her daughter or the daughter's progeny" (*Matter of Catherine JJ. v Charlotte II., supra,* at 753). The Court further stated that "[t]o hold otherwise would contravene the public policy expressed in Social Services Law § 384-b" (*Matter of Catherine JJ. v Charlotte II., supra,* at 753). The foregoing could be read to support a blanket prohibition against grandparental visitation where the parental rights of the grandparent over their own offspring have been terminated. However, the final sentence of the decision indicates that the Court's determination was greatly influenced by the fact that the grandchildren had been surrendered for adoption and thus the petitioner had "no statutorily based rights over [the] adoptive parents" (*Matter of Catherine JJ. v Charlotte II., supra,* at 753). It would appear that the Court perceived that the grandmother's request for visitation with her grandchildren would do harm to the sanctity of their new adoptive family, while simultaneously undermining the policy considerations favoring adoptions, and that this was the true rationale for the decision.

*Matter of Catherine JJ.* is distinguishable from the matter at bar. In the instant case, Elizabeth's parental rights over DaQuane have been only temporarily suspended, due to pending neglect charges. DaQuane has not been adopted, and for as long as he remains in foster care, the petitioner may be a valuable familial resource. Thus, the petitioner is not seeking to foist herself on unwilling adoptive parents, but rather is merely attempting to establish a relationship with a grandchild whose eventual permanent care and custody are presently undetermined, and who may well be returned to his mother; a mother who has voluntarily reestablished a relationship with the

petitioner notwithstanding the termination of the legal parent/child relationship.

In *Matter of Clarabelle K. v Christman* (225 AD2d 951), the Third Department again considered the issue of grandparental visitation sought by a grandmother whose parental rights over her own daughter had been terminated. In that case, however, the Court affirmed an order denying the grandmother's application, but it did not do so solely upon basis of the termination of the parental rights. Rather, the Court denied standing because the evidence demonstrated that the grandmother was immature and had poor judgment. The Court concluded: "[i]n sum, taking into account all relevant circumstances, including the fact of, and the basis for, petitioner's loss of her parental rights, it cannot be said that this is a situation in which equity should intervene to permit petitioner to seek visitation" (*Matter of Clarabelle K. v Christman, supra,* at 952-953).

The foregoing quoted language demonstrates that the Third Department followed what we regard as the correct analytical approach in denying standing to the petitioner grandmother in *Clarabelle K.* It considered all relevant circumstances *including* the fact of and the reason for the termination of her parental rights, thus suggesting a retreat from the legal theory implied in *Catherine JJ.* Most critically, unlike the approach of the Family Court, the fact of the termination of parental rights was but one consideration; it was not a dispositive threshold factor.

As the Court of Appeals observed in *Matter of Emanuel S. v Joseph E. (supra,* at 181), as presently enacted, Domestic Relations Law § 72 rests on the humanitarian concern that visits with a grandparent are often a precious part of a child's experience and there are benefits which devolve upon the grandchild which he may not be able to derive from any other relationship. In this case we are led to believe that the petitioner grandmother has righted herself and desires to be a part of her grandson's life, apparently with the blessings of her daughter. She may well have the potential to be a positive influence on her grandson. Moreover, as noted, Elizabeth's parental situation is in flux. She may yet be DaQuane's custodian in the future and may well benefit from the petitioner's love and guidance. In the absence of any authority compelling the conclusion that the petitioner's loss of her parental rights as to Elizabeth forecloses her from asserting her rights to grandparental visitation, the Family Court erred in dismissing the petition without any inquiry into the relevant considerations.

The petitioner is not merely a concerned third party. She is a biological grandmother of a child clearly in need of positive family influences. If the petitioner's claims of self-improvement are genuine, she most certainly should be afforded an opportunity to establish that visitation with DaQuane is in his best interests.

Most significant to our determination in this case is the potential detrimental effect to children such as DaQuane, were we to summarily cut off at the pass the standing of grandparents such as this petitioner without considering all of the circumstances bearing upon a child's ultimate best interest. All termination proceedings are not identical. They result from many different types of parental misconduct. Children who are the subject of proceedings to terminate parental rights resulting from horrendous physical or sexual abuse are in a markedly different posture from those like Elizabeth, whose mother was apparently incapable of caring for her due to alcohol or drug addiction problems, and who may indeed be rehabilitated, and capable of being a valued grandparent. It would be highly unlikely for a Family Court to grant standing to a grandparent to seek visitation with a grandchild where that parent had perpetrated vicious abuse toward her child. However, where parental rights have been terminated due to neglect, as is apparently the case before us, and that parent has demonstrably been rehabilitated, the court may well look differently upon the application of such a parent for visitation with her grandchild in considering that child's best interest.

Furthermore, the reality is that many children never become candidates for adoption, that they often spend the most formative years of their lives shuttled from one foster home to another, with horrendous consequences reported daily by the media. Such facts we dare not ignore. For such children the potential benefit of the care and company of a concerned grandparent may be not only in that child's best interests but the key to the child's survival.

It warrants emphasis that this case deals only with the right to assert a claim for grandparental visitation; the issue of simple standing. We are by no means suggesting that the petitioner herein must be granted visitation rights. We conclude only that in equity and justice, she should be given the chance to prove that visitation would be in DaQuane's best interests. As the Law Guardian argued below, "[i]f it is the Department [of Social Services]' intention to reunite this child with his mother, then it seems short-sighted to eliminate,

without any further inquiry, the biological grandmother as a resource". We wholeheartedly agree with this observation and thus we reverse the order dismissing the petition, on the law and as a matter of discretion in the interest of justice, and remit this matter for further proceedings consistent herewith.

ROSENBLATT, J. P., GOLDSTEIN and McGINITY, JJ., concur.

Ordered that the order is reversed, on the law and as a matter of discretion in the interest of justice, without costs or disbursements, and the matter is remitted to the Family Court, Orange County, for further proceedings consistent herewith.