OPINION OF THE COURT
W. Dennis Duggan, J.
The issue in this case is whether a grandmother, who sur *517 rendered her rights to her son, has standing to file for visitation of her surrendered son’s children. The court holds no.
The petitioner surrendered her parental rights to her son when the boy was nine. At age 12, the son was adopted. That son now has two children, ages 10 and 5, with whom the grandmother wants to visit. The grandmother alleges that she has spent every other weekend with these children for the past five years. The biological mother has had full custody of the children since at least March 2004. The January 2008 custody order between the mother and the father provides that the father’s custodial access to the children “shall not be in the presence of the father’s biological parents and siblings.”
Domestic Relations Law § 72 (1) permits a grandparent to petition for visitation where “equity would see fit to intervene,” but the statute does not define the term “grandparent.” The Court of Appeals, in Emanuel S. v Joseph E., found that “an essential part of the inquiry is the nature and extent of the grandparent-grandchild relationship” (78 NY2d 178, 182 [1991]). In this case, we are one step short of reaching the equity issue. The issue presented here is whether the petitioner is still a grandparent within the meaning of Domestic Relations Law § 72 (1). The court holds that she is not.
Only the Second and Third Departments have ruled on this issue and their differing rationales have left the rule of law uncertain on this point.[1] This court finds the concurring opinion in the Third Department’s decision in Clarabelle K. v Christman to be the correct rule of law (225 AD2d 951 [3d Dept 1996]). In that case, the plurality opinion held that: “taking into account all relevant circumstances, including the fact of, and the basis for, [the mother’s] loss of her parental rights, it cannot be said that this is a situation in which equity should intervene to permit the petitioner to seek visitation” (Clarabelle K. at 952-953 [emphasis added]). The concurring opinion states:
“As Family Court was powerless to provide [the mother] with an order granting her visitation with [her child] subsequent to the termination of her parental rights, the court is now powerless to provide [the mother] with an order permitting visitation with [her child’s] children . . . [Petitioner *518 is not a ‘grandparent’ within the meaning of Domestic Relations Law § 72” (Clarabelle K. at 953-954).
The grandmother argues that the Second Department opinion in Matter of Ann M.C. v Orange County Dept. of Social Servs. (250 AD2d 190 [1998]) should be controlling. In Ann M.C., the maternal grandmother’s parental rights were terminated when her daughter was nine. The daughter was then adopted but the grandmother and her daughter continued to visit and maintain a parent-child relationship. When the daughter became an adult, her children were temporarily removed by Child Protective Services. At that point in time, the grandmother filed a visitation petition. The Second Department found that the grandmother had standing to petition for visitation of her grandchildren based on the Emanuel S. equity rule. “[The] potential benefit of the care and company of a concerned grandparent may not only be in that child’s best interests but the key to the child’s survival.” (Ann M.C. at 197.) The court distinguished Ann M.C. from the Third Department cases of Matter of Catherine JJ. v Charlotte II. (216 AD2d 752 [3d Dept 1995]) and Clarabelle K. (supra), which both denied grandparent applications for grandchild visitation. Catherine JJ. was distinguished because the children in that case had been adopted at the time that the visitation petition was filed. Clarabelle K. was distinguished because, in that case, the denial of standing was based not only on the termination of the grandmother’s parental rights of her child, but also because of the grandparent’s child-caring deficits (Ann M.C. at 196). Surprisingly, the Third Department in its Clarabelle K. decision does not refer to its decision in Catherine JJ., decided just nine months earlier, which held: “When petitioner’s parental rights to her own daughter were severed, any familial connection to her daughter or the daughter’s progeny was also severed. To hold otherwise would contravene the public policy expressed in Social Services Law § 384-b.” (Catherine JJ. at 753 [emphasis added].)[2]
This court is faced with two contradictory rules of law on this issue. In the Third Department there is the strong, direct state *519 ment contained in Catherine JJ., quoted above, and the equally strong, direct statement contained in the concurring opinion of Clarabelle K. From both, one would conclude that a grandparent has no standing to petition for visitation of a grandchild if that grandparent’s parental rights to the mother of that child have been surrendered. On the other side is the Second Department’s decision in Ann M.C. that ignores the surrender and applies an equity/best interest test. In the middle is the plurality opinion in Clarabelle K., which seems to use both tests. Faced with having no bright line rule of law to apply, this court holds that the plain English meaning of the law, as expressed in the concurring opinion in Clarabelle K., should govern. That opinion unequivocally states that the grandparent who has no parental rights “is not a ‘grandparent’ within the meaning of Domestic Relations Law § 72” (Clarabelle K. at 953-954).[3]
Until the Legislature specifically addresses this issue, plain meaning should prevail. “Generally, statutes in derogation of the common law receive strict construction.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 301.) A statute granting grandparent visitation “derogates from the common-law rule that grandparents have no standing to assert rights of visitation against a custodial parent.” (Matter of E.S. v P.D., 8 NY3d 150, 156 [2007] [internal quotation marks and brackets omitted].) The petitioner in this case is not a grandparent under Domestic Relations Law § 72. If the term “grandparent” in Domestic Relations Law § 72 is to be given only a biological meaning, as opposed to a legal meaning, then the equity test works fine — regardless of whether the grandparent had surrendered her rights to her child or had those rights terminated.[4] If that were the rule, however, then there could be no logical reason not to extend visitation rights to parents who have had their parental rights terminated. After all, Family Courts frequently see compelling equitable circumstances when visitation between a child and a terminated parent would be in the best interests of the child. However, no court has interpreted the term “parent” to apply to a surrendered *520 or terminated parent giving them the right to apply for visitation.[5] For example, the Fourteenth Amendment provides that a person who is born or naturalized in the United States is a citizen. However, if that person surrenders her citizenship, she obviously ceases being a citizen, despite still having been born in the United States. A mother who surrenders her parental rights to her child ceases being the legal mother of that child or a legal grandparent of that child’s child, even though she would still be the biological parent and grandparent. If a surrendering or terminated parent is to be given court ordered access rights to a grandchild, that right should be unambiguously granted by statute. It should not be spun out of a court’s perceived duty to do whatever that court feels is in the best interest of a child. It should be restated that in this case, both parents have agreed in a stipulated court order that the grandmother was to have no contact with the children. Both the law and logic presume that two parents, acting together, are doing what is in their child’s best interest.
Finally, support for the position that an equity test is not appropriate in a surrendered grandparent visitation case is the Court of Appeals decision Ronald FF. v Cindy GG.: “[Visitation is a subspecies of custody, but the differences in degree in these relational categories is so great and so fundamental that rules like the Bennett rule, which have been carefully crafted and made available only to custody disputes, should not be casually extended to the visitation field.” (70 NY2d 141, 144 [1987], citing Matter of Bennett v Jeffreys, 40 NY2d 543 [1976].) Ronald FF. stands for the proposition that, absent specific statutory authority, court-ordered visitation by a nonparent is not authorized, regardless of how great the equities.
The surrender documents, which the petitioner signed, included the following: “the parent is giving up all rights to have custody, visit with, speak with, write to or learn about [her son] forever” (Social Services Law § 383-c [5] [b] [ii]). It is hard *521 to understand how a parent, giving up visitation with her own child, could preserve rights in a legal document that would retain visitation privileges with the next generation.

. “[T]he rule in New York is that the trial courts must follow an Appellate Division precedent set in any department in the State until its own Appellate Division decides otherwise.” (Stewart v Volkswagen of Am., 181 AD2d 4, 7 [2d Dept 1992], revd on other grounds 81 NY2d 203 [1993].)

. The intent of the Legislature in passing Social Services Law § 384-b was to provide permanency for a child who is not able to return to his natural parent. (Social Services Law § 384-b [1]; Matter of T.C. v R.C., 195 Misc 2d 417, 419 [2003].) “An order of termination is res judicata and acts as a permanent preclusion to a birth parent from seeking a court sanctioned legal relationship with the infant.” (Carrieri, 2003 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 52A, Social Services Law § 384-b, 2008 Pocket Part, at 78.)

. We are not considering a situation where the grandparent has not surrendered her child but her child surrendered her own children. In that case, the grandparent may have standing to petition for visitation of the surrendered grandchild. (See Moorhead v Coss, 17 AD3d 725 [2005].)

. The Legislature, in an attempt to clarify the relationship of adopted-out children and their birth families, amended Domestic Relations Law § 117 (2) (a) to include the statement: “adopted children and their issue thereafter are strangers to any birth relatives.” (L 1986, ch 408, § 1.)

. In Rita W, the Appellate Division, Third Department, found that where parental rights are terminated, a court may not “require or permit contact by and between a biological parent and a child who has been adopted.” (Matter of Rita VV., 209 AD2d 866, 868 [3d Dept 1994].) In 2005, Social Services Law § 383-c was amended to permit a surrendering parent to reserve visitation rights in the surrender document. The Legislature made no provision for extending those reservations to grandparent visitation rights. In a termination case, the court may not reserve parental visitation rights in its final order (Rita VV. at 868-869).