OPINION OF THE COURT
Joan S. Posner, J.
Petitioners are the paternal grandparents of M.C., Jr. The child’s mother is deceased. The child’s father is incarcerated and pursuant to an order of protection issued by the Integrated Domestic Violence Court (Posner, A.J.) is prohibited from having contact with the child except for written communication once per month through the Department of Community and Family Services. This order of protection is in effect until May 22, 2025.
The child resides with his maternal grandmother, Arlene D., pursuant to an order of guardianship of this court dated January 16, 2015. By way of background, respondent D. had previously been granted temporary guardianship from August 7, 2013 until October 30, 2013. She withdrew that petition and the child was returned to the mother. Thereafter, on August 27, 2014 she re-filed for guardianship and was granted temporary guardianship on October 8, 2014. The child has remained in her care since that time.
By petitions filed on June 6, 2016 and amended on September 1, 2016 the paternal grandparents seek visitation with the child. In addition to the fact that the mother is deceased, each alleges that they have an established relationship with the child; they would see him several times a year at family gatherings and holidays; prior to the mother’s death she would bring the child to see them; and since her death they have made attempts to see the child which have been met with resistance from the guardian.
When the parties initially appeared before this court on August 1, 2016, the paternal grandparents and the father were unrepresented; the guardian appeared with counsel. The court assigned an attorney to represent the father and an attorney for the child. Counsel for the guardian made an oral motion to dismiss the pro se petitions, which the court denied. The paternal grandparents retained counsel and filed amended petitions on September 1, 2016.
*462 The guardian now moves to dismiss the paternal grandparents’ petitions alleging that in the 3V2 years the child has resided with her they have not seen the child; that they have failed to assert that they have an existing relationship with him; and that the allegations contained in the paternal grandparents’ petitions regarding their contact are not true, and, even if true, do not establish that they have had recent contact with the child.
The paternal grandparents and the father oppose the motions to dismiss. The Attorney for the Child supports dismissal of the grandparents’ petitions, asserting in a letter that the child does not have any independent recollection of the paternal grandparents or of the allegations in their petition.[1]
In determining these motions, the court has taken judicial notice of its own records, including prior orders and proceedings involving this child (see Jerome Prince, Richardson on Evidence § 2-209 [Farrell 11th ed 1995]; Matter of Lane v Lane, 68 AD3d 995 [2d Dept 2009]; Matter of Khatibi v Weill, 8 AD3d 485 [2d Dept 2004]).
“ ‘When a grandparent seeks visitation pursuant to Domestic Relations Law § 72 (1), the court must make a two-part inquiry’ ” (Matter of Moskowitz v Moskowitz, 128 AD3d 1070, 1070 [2015], quoting Matter of Brancato v Federico, 118 AD3d 986, 986 [2014]; Matter of Fitzpatrick v Fitzpatrick, 137 AD3d 784, 785 [2d Dept 2016]). First, the court must determine that a grandparent has standing (see Domestic Relations Law § 72 [1]; Matter of E.S. v P.D., 8 NY3d 150, 157 [2007]; Matter of Weiss v Orange County Dept. of Social Servs., 142 AD3d 505 [2d Dept 2016]). “[T]he burden of establishing standing lies with the grandparent and it is ‘conferred by the court, in its discretion, only after it has examined all the relevant facts’ ” (Matter of Roberts v Roberts, 81 AD3d 1117, 1118 [3d Dept 2011], quoting Matter of Emanuel S. v Joseph E., 78 NY2d 178, 182 [1991]). “Where either parent of the grandchild has died, the grandparents have an absolute right to standing” (Matter of Emanuel S. v Joseph E. at 181; see Domestic Relations Law § 72 [1]).
In contrast to this automatic standing, when both parents of children are alive a grandparent has the right to seek visita *463 tion where, as a threshold matter, he or she can establish circumstances in which “equity would see fit to intervene,” i.e., that equitable circumstances exist (Domestic Relations Law § 72 [1]; see Matter of Emanuel S. v Joseph E., 78 NY2d 178, 181 [1991]; Matter of Seddio v Artura, 139 AD3d 1075 [2d Dept 2016], quoting Matter of Gray v Varone, 101 AD3d 1122, 1123 [2d Dept 2012]). Only when a showing of equitable circumstances has been made does a grandparent have standing to seek visitation (see Matter of Seddio v Artura at 1076 [citations omitted]; Matter of Fitzpatrick v Fitzpatrick, 137 AD3d 784 [2d Dept 2016] [citations omitted]). In determining whether grandparents have standing or whether circumstances exist in which “equity would see fit to intervene,” the essential components to the inquiry are the “nature and extent of the grandparent-grandchild relationship” (.Matter of Emanuel S. v Joseph E. at 182) and “the nature and basis of the parents’ objection to visitation” (id.). “The evidence necessary will vary in each case but what is required of grandparents must always be measured against what they could reasonably have done under the circumstances” (id. at 183; see Matter of Agusta v Carousso, 208 AD2d 620, 621 [2d Dept 1994]).
As an initial matter, the guardian argues that the paternal grandparents do not have standing because the deceased parent was not their child, citing Matter of Ann M.C. v Orange County Dept. of Social Servs. (250 AD2d 190, 194 [2d Dept 1998]). However, after reviewing the legislative history of Domestic Relations Law § 72 the court does not find this argument persuasive.
As the Court of Appeals noted in Matter of Emanuel S. v Joseph E. (78 NY2d 178 [1991]), grandparents had no standing to seek visitation under common law. This changed in 1966 with the enactment of Domestic Relations Law § 72 which granted standing to bring a visitation petition only if the grandparent’s child had died. Specifically, the statute as enacted read as follows:
“§ 72. Habeas corpus to obtain visitation rights in respect to certain infant grandchildren
“Where either or both of the parents of a minor child, residing within this state, is or are deceased, a grandparent or the grandparents of such child, who is or are the parents of such deceased parent or parents, may apply to the supreme court for a writ *464 of habeas corpus to have such child brought before such court; and on the return thereof, the court, by order, after due notice to the parent or any other person or party having the care, custody and control of such child, to be given in such manner as the court shall prescribe, may make such directions as the best interest of the child may require, for visitation rights for such grandparent or grandparents in respect to such child.” (L 1966, ch 631, § 1 [emphasis added].)
Under the initial statute, a grandparent’s standing was “derived entirely from the deceased parent” (see Matter of Emanuel S. v Joseph E. at 181). Effective July 8, 1975, the legislature amended the statute to add the second basis for granting a grandparent standing to seek visitation—where equity sees fit to intervene. At the same time, the legislature removed the provision that limited standing to “grandparents whose child had died” (see Matter of Emanuel S. v Joseph E. at 181; L 1975, ch 431). Chapter 431 of the Laws of 1975 reads as follows:[2]
“§ 72. Habeas corpus to obtain visitation rights in respect to certain infant grandchildren
“Where either or both of the parents of a minor child, residing within this state, is or are deceased, or where circumstances show that conditions exist which equity would see fit to intervene, a grandparent or the grandparents of such child,-who-is or arc the parents e-f such deceased parent or-parents, may apply to the supreme court for a writ of ha-beas corpus to have such child brought before such court; and on the return thereof, the court, by order, after due notice to the parent or any other person or party having the care, custody, and control of such child, to be given in such manner as the court shall prescribe, may make such directions as the best interest of the child may require, for visitation rights for such grandparent or grandparents in respect to such child.” (L 1975, ch 431, § 1.)
Thus the legislature specifically and intentionally deleted the phrase referring to the grandparent as the parent of “such deceased parent.” “A statute must be read and given effect as it is written by the Legislature, not as the court may think it should or would have been written if the Legislature had envisaged all of the problems and complications which might arise *465 in the course of its administration” (McKinney’s Cons Laws of NY, Book 1, Statutes § 73, Comment [citations omitted]). “While the courts may sometimes depart from the literal wording of an enactment when such departure is necessary to further the legislative intent, when the intent of the lawmakers is not in doubt, the courts cannot revise the legislation or do otherwise than to carry out its plain command.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 73, Comment [citations omitted].)
“Generally, a court cannot by implication supply in a statute a provision which is reasonable to suppose the Legislature intended to intentionally omit. When it is urged that a particular statute should be construed to cover a matter not expressly mentioned in the act, the courts frequently assert that, if the legislature had intended the statute to include the matter in question, it would have been easy for them to have said so and to have expressly included it. The court reasons that the failure of the Legislature to include the matter within the scope of the act indicates that its exclusion was intended, and the court refuses to insert the matter in the statute on the ground that it has no power to make such judicial legislation.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 74, Comment [citations omitted].)
It is clear that the legislature intentionally deleted the provision of Domestic Relations Law § 72 which conferred standing only upon those grandparents whose child had died. Moreover, the language in the case law relied upon by the guardian was contained in dicta.
“The binding force of a precedent is also limited to [a] point actually decided and the facts actually involved, and it is well established that the doctrine of stare decisis does not give effect to dicta or those statements and remarks by the courts concerning legal propositions not essential to the case at hand.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 72, Comment [citations omitted].)
The case cited by guardian’s counsel did not deal with standing based upon the death of a parent, but instead arose in the context of termination of parental rights (see Matter of Ann M.C. v Orange County Dept. of Social Servs., 250 AD2d 190, 194 [2d Dept 1998]). Subsequent decisions have reaffirmed *466 that the death of either of the parents confers standing on grandparents for visitation (see Matter of Weiss v Orange County Dept. of Social Servs., 142 AD3d 505 [2d Dept 2016]; Matter of Gavrusinas v Melnichenko, 305 AD2d 679 [2d Dept 2003]).
Based upon the foregoing, the court holds that the paternal grandparents have established standing based upon the death of the child’s mother. Once it is determined that grandparents have standing, the court then must determine whether visitation would be in the child’s best interests (see Domestic Relations Law § 72 [1]; Matter of E.S. v P.D., 8 NY3d 150, 157 [2007]; Matter of Emanuel S. v Joseph E. at 181).
The guardian’s motion to dismiss primarily addresses the issue of whether the paternal grandparents and the child have a relationship and whether it would be in the best interests of the child to have contact with the paternal grandparents. In their submissions the guardian and the Attorney for the Child challenge the veracity of the paternal grandparents’ claims as to the frequency of contact and nature of the relationship with the child. However, for the purposes of a motion to dismiss, the court must accept the allegations in the petitions as true and view those allegations in the light most favorable to the petitioners (see Nonnon v City of New York, 9 NY3d 825 [2007]).
Taking the allegations contained in the petition as true, the court finds that the petitions make out a prima facie case for grandparent visitation (see Matter of Gort v Kull, 96 AD3d 842, 843 [2d Dept 2012], lv denied 20 NY3d 858 [2013]). The petitions allege that the paternal grandparents saw the child four to five times per year since the child was born through 2012 and more frequently during 2014 through the summer of 2015 at family gatherings and when the mother would bring the child for visits. They allege that they have attempted to maintain a relationship with and visit the child since the mother’s death but have been met with “resist[a]nee, excuses, changed plans and broken promises.” The validity of the allegations and whether visitation is in the best interests of the child is a matter of fact to be determined at a hearing, not in a motion to dismiss (see Matter of Brancato v Federico, 118 AD3d 986 [2d Dept 2014]). The court will afford the grandparents an opportunity to present evidence and testimony to support their allegations.
Accordingly, the motions to dismiss are denied.

. The paternal grandparents filed separate petitions for visitation, which contain almost identical allegations. Similarly, the guardian filed a motion to dismiss each of the petitions, setting forth the same assertions in each motion. Accordingly, the court is deciding these motions together.

. Additions are indicated by underline; deletions by strikeout.